Argued and submitted August 30,
affirmed December 24, 1979

# EUGENE TELEVISION, INC.,
*Respondent,*

*v.*

# FLINN,
*Appellant.*

## (No. A80-373, CA 13197)

604 P2d 437

J. P. Harris, II, Salem, argued the cause and filed the brief for appellant.

Thomas Craig Thetford, Certified Law Student, Eugene, argued the cause for respondent. With him on the brief were Bevans & McCullen, and Keith Y. Boyd, Eugene.

Before Buttler, Presiding Judge, Gillette, and Roberts, Judges.

GILLETTE, J.

**GILLETTE, J.**

In this proceeding involving the sale of television advertising time by plaintiff to defendant, plaintiff filed a complaint in two counts. The first count stated four alternative causes of action: express promise to pay, statement of account, implied contract, and written contract, and sought money damages and attorney fees under each. The second count was based upon a check, payment of which was allegedly stopped by the defendant. Plaintiff moved for summary judgment. Both parties filed affidavits. The trial court granted the plaintiff's motion in the amount prayed for. Defendant appeals, arguing that a material issue of fact exists concerning the scope of the agency of the individuals entering into the advertising contracts with the plaintiff. We affirm.

The television advertising in question here was purchased for defendant Flinn's Eugene outlet. The contracts in question were signed by Hans Ewaldsen, the manager of defendant's Eugene store, and Thomas Kepner, defendant's advertising agency representative. The plaintiff submitted four affidavits and a statement of account in support of its motion for summary judgment.

Three of the affidavits were by members of the plaintiff's staff who had various dealings with defendant. The first, by KVAL-TV account executive Dave Coplin, stated that Coplin sold TV advertising to the defendant's business. He dealt with Ewaldsen and Peter Powell (defendant's advertising consultant). At all times, according to Coplin, Ewaldsen represented himself as having full authority to negotiate and sign TV advertising contracts. There was no indication that any authority from Flinn would be required before Ewaldsen could sign. The only limitation was that, should Kepner sign TV ad contracts, it would be necessary to obtain prior approval by *Ewaldsen.* Such approval was obtained when needed.

[839]

Coplin further stated in his affidavit that, while negotiating payment for the contracts with Flinn, Flinn acknowledged the business's responsibility and never suggested any limits on Ewaldsen's or Kepner's authority. A check from Coffee, Tea or Stereo, signed by Ewaldsen and in payment for the advertising, was received by plaintiff. The check was not cashed. Flinn informed the affiant that he was closing the account on which the check was written but would issue a new check.

The second affidavit was by plaintiff's local sales manager, Gordon Bussey, who approved the contracts with the defendant. He stated that at all times during negotiations Ewaldsen and Kepner were represented as having full authority to negotiate and sign TV ad contracts in defendant's name.

The third affidavit was by John Edwards, an accounting employe of plaintiff who stated that, in discussions with Flinn over payments, Flinn acknowledged responsibility and at no time claimed that Ewaldsen's authority was limited.

The defendant filed an affidavit stating that at no time did Ewaldsen or Thomas Kepner have authority, real or apparent, to authorize contracts for advertising without his express consent. Any such contracts, he claimed, were outside the scope of their authority.

Defendant also filed a supplemental affidavit denying the Coplin, Bussey and Edwards affidavits, saying, "I deny the contents of the Dave Copeland [*sic*], Gordon Bussey and John Edwards affidavits." In this second affidavit, defendant further stated that Ewaldsen managed his Eugene business but with limits on his authority. Ewaldsen was to consult with defendant before entering into any advertising contract and was to use only cooperative advertising. He stated that Ewaldsen did not consult him on the contracts in question and that no calls or correspondence were received from the plaintiff confirming Ewaldsen's authority. Defendant added that, prior to this time, his

company had not engaged in any advertising and Ewaldsen had not been involved in obtaining TV advertising contracts.

Had defendant's general denial of the contents of the Coplin, Bussey and Edwards affidavits been efficacious, a material issue of fact concerning agency might have remained unresolved. However, defendant's general denial was not efficacious.

A party opposing summary judgment cannot rest upon the allegations of his pleadings. He must "disclose the merits of his case or defense." 6 Moore's Federal Practice 2d § 56.22(2) at 1337. Federal Courts, in construing Rule 56, Fed R Civ P (which is virtually identical to ORS 18.105(4)), have stated that conclusory allegations and general denials do not, by themselves, create an issue of fact. *Bruce v. Martin-Marietta Corp.*, 544 F2d 442 (10th Cir 1976); *see also Bumgarner v. Joe Brown Co.*, 376 F2d 749 (10th Cir 1967), *cert den* 389 US 831 (1968); *Dressler v. The MV Sandpiper*, 331 F2d 130 (2d Cir 1964). Moore states that

" * * *

" * * *[The] opposing party is not entitled to hold back his evidence until trial and is not entitled to a trial on the possibility that an issue of material fact might turn up at the trial." 6 Moore's Federal Practice 2d § 556.22(2), pp 1339-40. *First National Bank v. Cities Services Co.*, 391 US 253, 290, 88 S Ct 1575, 20 L Ed 2d 569 (1968); *Donnelly v. Guion*, 467 F2d 290, 293 (2nd Cir 1972).

Disregarding defendant's general denial of the three affidavits leaves them essentially uncontradicted. Since they establish, among other things, that defendant personally acknowledged his obligation to pay the debt in question, the trial court was correct in granting summary judgment for plaintiff.

Affirmed.