Argued and submitted June 23, 1982, affirmed January 19, 1983

# NORTHWEST ADMINISTRATORS, INC.,
*Respondent,*
*v.*
# WOODBURN TRUCK LINE, INC.,
*Appellant.*

(No. 122-346, CA A23318)

657 P2d 714

Robert L. Engle, Woodburn, argued the cause for appellant. With him on the briefs was Eichsteadt, Bolland, Engle, Schmidtman & Rohrer, Woodburn.

Linda J. Larkin, Portland, argued the cause for respondent. With her on the brief was Carney, Probst, Cornelius & Buckley, Portland.

Before Richardson, Presiding Judge, Thornton, Senior Judge, and Van Hoomissen, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Woodburn Truck Line (employer) appeals a judgment in favor of Northwest Administrators (administrator), administrator of the Western Conference of Teamsters Pension Trust Fund, for contributions due and owing on behalf of part-time employes, plus liquidated damages and attorney fees. Employer claims that administrator's motion for summary judgment should have been denied, because there was a triable issue of fact as to whether the employes in question were covered by the collective bargaining agreement. We affirm.

Employer and Teamsters Local 324 are parties to a collective bargaining agreement, including a pension trust agreement that requires pension contributions on behalf of employes represented by the union. Administrator sued for delinquent payments after an audit had disclosed that employer had not made contributions on behalf of part-time employes. In its answer, employer denied administrator's allegations that it owed contributions under the contract and raised the affirmative defense that the collective bargaining agreement had been orally modified, alleging that a union representative had said that contributions for nonmembers were not required. The employes in question do not belong to the union, nor has the union insisted that they become members, although the collective bargaining agreement contains a union shop provision.

Administrator moved for summary judgment, attaching to its motion the collective bargaining agreement, employer's admission of signing the agreement, the audit report and a legal memorandum that concluded that parol modification such as that urged by employer is not a viable defense. In its memorandum opposing summary judgment employer agreed that parol modification is an inadequate defense and argued instead that the contract did not require contributions on behalf of the employes in question, because they were not union members. In its reply memorandum, administrator pointed out that nonmembers were covered by the agreement, because the union does and must represent all members of the bargaining unit, whether or not they are union members. On appeal employer asserts for the first time that the employes in question are not

covered by the contract because they are not members of the bargaining unit. Employer relies principally on the argument that its part-time émployes could not be members of the bargaining unit, because they do not meet the National Labor Relations Board's "shared community of interest" standard for determining the appropriateness of the bargaining unit. It also contends that the contract does not define the bargaining unit to include part-time employes. Administrator argues that the contract covers part-time employes and that, in any case, employer is precluded from raising the bargaining unit issue for the first time on appeal.

We view employer's arguments as raising two claims: first, a claim as to construction of the contract with regard to which employes it was intended to cover, and second, a claim that it would violate national labor policy to include the part-time employes in the bargaining unit covered by the contract.

■ ■ We agree with administrator that the argument that the contract does not cover the part-time employes because their inclusion in the bargaining unit is against national labor policy is not properly before this court, because it was not raised below. Parties on appeal are restricted to the theories on which the case was presented below. *Friesen v. Fuiten,* 257 Or 221, 478 P2d 372 (1970); *Harryman v. Roseburg Fire Dist.,* 244 Or 631, 633, 420 P2d 51 (1966); *Owen et ux v. Mariott,* 226 Or 323, 359 P2d 905 (1961); *Edwards, Guardian, v. Hoevet,* 185 Or 284, 297-98, 200 P2d 955 (1948).

Employer maintains that it is not raising a new issue but is only presenting "modified reasons" for the defense raised below. Employer appears to take the position that it preserved the bargaining unit issue for appeal when it denied in its answer the allegation that administrator and employer were parties to a collective bargaining agreement under which defendant agreed to make pension contributions for each employe. Employer's denial could conceivably have been supported by any number of theories, but only those raised below may be raised on appeal. There may be cases in which it is difficult to determine whether an argument made on appeal supports the same theory raised

below or presents a new one, but the theory respecting the application of NLRB standards employer now urges is a new one in fact and in law.

█ Employer also submits that the denial in its answer should have been considered in determining whether there was a material issue of fact for trial and that its answer permitted presentation of evidence in a trial regarding the scope of the bargaining unit. If the moving party has indicated an absence of an issue of fact, the party opposing a motion for summary judgment must come forward with its evidence at that time and cannot rest on the allegations of its pleadings to show that there are genuine issues of fact. ORCP 47D; *Eugene TV v. Flinn,* 43 Or App 837, 841, 604 P2d 437 (1979).

We will not consider the issue whether under NLRB standards part-time employes *should* have been included in the bargaining unit, because it was not litigated below.[1] The issue whether the contract covered the employes in question was before the trial court. That issue involves construction of the agreement. Although employer did not argue below that the contract does not define the bargaining unit to include the part-time employes, administrator, as the party moving for summary judgment, had the burden of establishing that it was entitled to judgment as a matter of law and that there were no triable issues of fact. *Seeborg v. General Motors Corporation,* 284 Or 695, 699, 588 P2d 1100 (1978). Therefore we consider whether the contract by its terms covers the employes in question.[2]

It is undisputed that the Pension Trust Agreement applies to all employes covered by the collective bargaining agreement. The collective bargaining agreement consists of several sets of contracts, each set covering a three-year period relevant to the case. The "National Master Freight

---

[1] Administrator contends that parties may voluntarily determine any bargaining unit they choose and that NLRB standards are not relevant when the parties voluntarily bargain and enter a contract if the Board's jurisdiction has not been invoked in a challenge to the appropriateness of the bargaining unit. We do not comment on that contention.

[2] Arguably, the NLRB standard for the appropriateness of a bargaining unit has some bearing on the question of the parties' intent regarding the contract's coverage, but we do not consider the issue to be before us for that purpose either.

Agreement" is a general Teamsters agreement, supplemented by others that cover specific segments of the trucking industry. In none of the contracts is the scope of the bargaining unit explicitly defined.

Article 2 of the Master Agreement is titled "Scope of Agreement" and includes the following provisions:

"Section 1

"The execution of this National Master Freight Agreement on the part of the Employer shall cover all operations of the Employer which are covered by this Agreement, and shall have application to the work performed within the classifications defined and set forth in the Agreements supplemental hereto.

"* * * * *

"Section 3

"This agreement shall not be applicable to those operations of the Employer where the employees are covered by a collective bargaining agreement with a Union not signatory to this Agreement, or to those employees who have not designated a signatory Union as their collective bargaining agent."

Article 3, Section 2 of the Master Agreement concerns the seniority procedure for "casual" or "part-time" employes and states:

"* * * The words 'casual' or 'part-time' as used herein are meant to cover situations such as replacement for absenteeism and vacations."

One supplement to the Master Agreement is entitled the "Western States Area Pick-up and Delivery Local Cartage and Dock Workers Supplemental Agreement." Article 40 provides:

"Section 1

"(a) The execution of this Agreement on the part of the Employer shall cover all truck drivers, helpers, dockmen, warehousemen, checkers, power-lift operators, hostlers, and such other employees as may be presently or hereafter represented by the Union, engaged in local pick-up, delivery and assembling of freight within the jurisdiction of a Local Union, * * *.

"(b) Employees covered by this Agreement shall include, but not be limited to, any driver, chauffeur, or

driver-helper operating a truck, tractor, motorcycle, passenger or horsedrawn vehicle, or any other vehicle operated on the highway, street or private road for transportation purposes when used to defeat the purposes of this Agreement. The term employee also includes, but is not limited to, all employees used in dockwork, checking, stacking, loading, unloading, handling, shipping, receiving, assembling, drag lines and allied work."

That agreement discusses "casual employees," who may be "replacement casuals" to replace regular employes "off due to illness, vacation or other absence," or may be "supplemental casuals," who are used when all "available regular employes are working or scheduled to work."

Another supplement is the "Western States Over the Road Motor Freight Supplemental Agreement," which specifically refers to pension contributions for casual employes. In addition, the 1979-1982 version mentions time of payment for "supplemental employees" where the 1976-1979 version of the same provision refers to "casual employees." The "Employees Covered" section contains the same paragraph as Article 40, section 1(b) of the Pick-up and Delivery Supplement, although it does not contain the paragraph in Article 40, section 1(a). It purports to cover "all over-the-road dry freight operations of the Employer."

■ Employer does not dispute that the part-time employes perform classifications of work described by the contract.[3] The contract indicates that part-time or "casual" employes are within its coverage. On appeal, employer

---

[3] Employer has never contended that the employes are not covered because of the nature of the work they perform. In its memorandum opposing summary judgment, employer specifically admitted that "at certain times most of the named employees were doing some work specified in the collective bargaining agreements" and stated:

"Plaintiff's argument assumes that defendant was legally obligated to contribute to the Pension Trust Fund, on behalf of all employees of defendant, who at any time did work covered by the terms of the Collective Bargaining Agreements between the union and the defendant. If plaintiff's assumption is correct, that defendant was required to contribute to the Trust Fund for all of its employees who did union-type work, then plaintiff's Complaint may be well taken."

At oral argument, employer conceded that the duties of the employes in question are not in dispute. Depositions in the record indicate that almost all the employes were drivers and driver's helpers.

contends that the employes do not fit the definition of "casual" employes because they are moonlighting employes who have other jobs and do work that the regular employes prefer not to do (for example, taking runs when regular drivers want to be with their families). That factual contention was not made in the trial court. Even if it had been, we fail to see that part-time employes do not fit the definitions of "casual" employes in the agreement. On its face the contract applies to all of employer's employes performing in the classification it describes and no categories of employes are excluded because of part-time status. In the absence of controverting evidence to indicate that the parties did not intend to cover the part-time employes, the court correctly granted summary judgment.

Affirmed.