IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Corporation Excise Tax

| | | |
|---|---|---|
| ALASKA AIRLINES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 180065N |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **ORDER** |

This matter came before the court on cross motions for summary judgment. An oral argument was held in the courtroom of the Oregon Tax Court on June 12, 2019. Scott Schiefelbein, Tax Managing Director, Deloitte Tax LLP, appeared on behalf of Plaintiff. Marilyn Harbur, Senior Assistant Attorney General, and James Strong, Assistant Attorney General, appeared on behalf of Defendant.

A. *Statement of Facts*

Plaintiff is one of two airlines wholly owned and operated by Alaska Air Group (Air Group). (*See* Stip ¶ 4; Exs D at 5, E at 6, F at 4-6.) The other is Horizon Air (Horizon). (*See id.*) Horizon is a unitary affiliate of Plaintiff. (Stip ¶¶ 8, 21.) For the 2012 through 2014 tax years, Plaintiff filed consolidated returns for the group.[1] (Stip ¶¶ 4, 8.) Plaintiff originally filed its returns including Horizon's flight data in its departure ratio used to determine Oregon transportation sales, but subsequently amended those returns to exclude Horizon's flight data from the departure ratio. (Stip ¶¶ 16-18.) Plaintiff's returns eliminated Horizon's income from its capacity purchase agreement (CPA) with Plaintiff as intercompany receipts. (Stip ¶ 15.)

---

[1] In Defendant's view, Air Group should have filed the returns; Plaintiff maintains that Air Group did not engage in business in Oregon, though Defendant disagrees based on its 10-Ks. (Def's MSJ at 1 n2, at 3 n4.)

Defendant audited the amended returns, concluding that Horizon's flight data must be included in Plaintiff's departure ratio. (Stip ¶ 21.) Defendant's Conference Decision further determined that "Plaintiff's CPA revenue meets the definition of 'transportation sales.'" (*Id.*) The parties have raised three additional issues in their briefs: whether transportation sales include codeshare revenue; whether the transportation revenue in the numerator and denominator of Plaintiff's sales factor must match and, relatedly, whether transportation revenue includes certain income now identified by Plaintiff as a price credit for aircraft; and whether passive income items must be entirely excluded from the sales factor. (*See* Ptf's Resp at 2-6, Def's Reply at 1.)

1.      *Plaintiff's and Horizon's operations and fleets*

Plaintiff and Horizon are separate airlines for Federal Aviation Administration (FAA) purposes and each maintains detailed statistics on departures, equipment, passengers, and cargo. (First Decl of Pedersen at ¶¶18-20.) Each has a separate FAA license and operating certificate. (Stip Facts at ¶5.) Each airline has different "operation specifications," which must be approved by the FAA. (Second Decl of Pedersen at ¶10.) The FAA inspections of the "operations specifications" occur in different locations for Plaintiff and Horizon. (*Id.* at ¶¶11-12.)

Both Plaintiff and Horizon operate flights that originate and terminate in Oregon, as well as flights that neither originate nor terminate in Oregon. (Stip ¶¶ 10-11; First Decl of Brandon Pedersen at ¶8.) Plaintiff provides air transportation to more than 100 cities in the United States, Canada, and Mexico. (*Id.* at ¶8.) Horizon "is a regional airline that generally serves smaller airports throughout the Pacific Northwest, including Oregon, Washington and Idaho." (First Decl of Pedersen at ¶9.) In its "mainline operations," Plaintiff carried 19 million revenue passengers in 2012, 19.7 million in 2013, and 21 million in 2014. (Stip Exs D at 6, E at 6, F at 6.) Through its "regional operations" (flights by Horizon, SkyWest, and Peninsula), Plaintiff

carried 7 million revenue passengers in 2012, 7.7 million in 2013, and 8.3 million in 2014. (Stip Exs D at 6, E at 7, F at 7.) Horizon is "the largest regional airline in the Pacific Northwest" and carried about 90 percent of Air Group's regional revenue passengers. (*Id.*) Plaintiff's regional flights were "primarily in * * * Washington, Oregon, Idaho and California." (*Id.*)

Plaintiff operates a Boeing 737 jet fleet and Horizon operates a Bombardier Q-400 turboprop fleet, each with a different maintenance program. (Second Decl of Pedersen at ¶¶6, 14.) Plaintiff's aircraft included first class and coach seating sections, overhead bins for luggage, running water in the lavatories, and running water and ovens in the galley. (*Id.* at ¶¶ 21, 23-25.) Horizon's aircraft included a single coach section, limited overhead storage, and no running water or ovens. (*Id.* at ¶¶29, 32-34.) Other differences include boarding (jet bridge vs. ramp or stairs), Wi-Fi, outlets, seat colors, and the cost and selection of food and beverages. (*Id.* at ¶¶ 22, 26-28, 31-36.) Plaintiff and Horizon have different "pilot groups," "flight attendant groups," "labor groups and contracts," and "largely different officer groups." (*Id.* at ¶¶8-9, 16-17.)

2. *Capacity purchase agreements*

CPAs are common within the airline industry and allow smaller regional airlines "to serve communities that lack the demand to support service by national airlines." (First Decl of Pedersen at ¶¶29-30.) For each of the tax years at issue, Plaintiff entered a CPA with Horizon to purchase all of Horizon's flight capacity. (*Id.* at ¶10; Stip Exs A-C.) Plaintiff resold seats on Horizon's flights to third-party passengers. (First Decl of Pedersen at ¶22.) Plaintiff's payment to Horizon under the CPA was based on seating capacity and not the amount of seats sold by Plaintiff on Horizon's flights. (*Id.* at ¶¶21-23.) Plaintiff bore the risk of loss for any unsold tickets. (*Id.* at ¶22.) Pursuant to the CPAs, Plaintiff was responsible for setting the flight schedules for Horizon. (*See* Stip Exs A at 3, B at 3, C at 3.) Plaintiff marketed and sold the

tickets on Horizon flights, and passengers were subject to Plaintiff's carriage contract. (*Id.*) Plaintiff managed "all passenger revenue from the [f]lights, including fare setting, ticket sales, checked/oversized baggage fees, buy-on-board receipts and all other sources of ancillary revenue related to the [f]lights." (*Id.*) Plaintiff also had CPAs with SkyWest and Peninsula Airways to purchase all of their capacity on a portion of their flights.[2] (First Decl of Pedersen at ¶11, 26.)

Plaintiff is required by the International Air Transport Association (IATA) to use its designator code for all regional airline flights that it sells. (Second Decl of Pedersen at ¶4.) "Designator codes are an integral part of the travel industry and are used to identify the marketing carrier [Plaintiff], its destinations and its traffic documents." (Id. at ¶5.) "Horizon flights are listed under Alaska's designator code in airline reservation systems, and in all customer-facing locations." (Stip Exs D at 6, E at 7, F at 7; see also Stip Exs A at 3, B at 3, C at 3 (CPAs with Horizon requiring use of Plaintiff's designator code).) Pedersen explained that Plaintiff's and Horizon's "public facing elements are designed to make the guest experience seamless" and that is also true of Plaintiff's CPAs with other regional airlines. (Second Decl of Pedersen at ¶37.)

Under its CPAs, Plaintiff "receive[d] all passenger revenue" from the regional airlines' flights. (Stip Exs D at 5, E at 6, F at 6.) None of the CPAs required the regional airlines "to operate flights on behalf of Plaintiff or as Plaintiff's agents[,]" nor did they require Plaintiff to sell seats on the regional airline's flights as an agent of the regional airline. (First Decl of

---

[2] SkyWest and Peninsula are each regional airlines with their own FAA licenses and operating certificates similar to Horizon. (First Decl of Pedersen at ¶13.) Neither SkyWest nor Peninsula are part of Plaintiff's affiliated group for federal or Oregon returns. (*Id.* at ¶14.) In its Amended Returns, Plaintiff eliminated the flight data from SkyWest from its departure ratio, which was accepted by Defendant's auditor. (Ptf's MSJ at 6-7.) Plaintiff maintains that Horizon flights should be treated in the same manner as other, third-party regional airlines that have CPAs with Plaintiff. (*Id.* at 10-11, 19.) Defendant draws a distinction between Horizon and the other, third-party regional airlines because Horizon is part of Plaintiff's consolidated filing group. (*See* Def's MSJ at 13-14.)

Pedersen at ¶27-28.)

        3.     *Codeshare revenue*

Plaintiff "derives codeshare revenue by making ticket sales and reservations to passengers for flights operated by other airlines (e.g., American, Delta, etc.). [Plaintiff] collects the amounts paid by passengers for tickets sold and remits those amounts to the airline operating the corresponding flight, net of a service charge for providing this service." (Second Decl of Pedersen at ¶38.) "Most of [Plaintiff's] codeshare relationships are free-sell codeshares, where the marketing carrier sells seats on the operating carrier's flights from the operating carrier's inventory, but takes no inventory risk." (Stip Exs D at 9, E at 10, F at 9.) When another airline pays Plaintiff for a seat on one of Plaintiff's flights, Plaintiff treats that sale as transportation revenue to which the departure ratio is applied. When Plaintiff pays another airline for a seat, Plaintiff does *not* treat the related revenue as transportation revenue because Plaintiff must buy a seat on the other airline's flight and may not include the other flight in its departure ratio.[3]

In its Notices of Deficiency, Defendant determined that Plaintiff's "codeshare revenue" is "transportation revenue" and must, therefore, be included in the numerator; it included the following amounts of codeshare revenue: $3,809,603,268 in 2012; $3,998,050,096 in 2013; and $4,397,048,001 in 2014. (*See* Stip Ex G at 4, 9, 14; *see also* Def's MSJ at 9.) Plaintiff maintains that its codeshare revenue reported for each tax year was in error due to double counting; it recalculated its codeshare revenue to reflect only the service fees retained by Plaintiff: $233,180,540 for 2012; $286,640,119 for 2013; and $246,752,799 for 2014. (*See* Ptf's Resp at

---

[3] At oral argument, Plaintiff's counsel offered the following example: A passenger buys a ticket from Plaintiff to fly from Portland to Washington D.C. to Charlotte for $1,500. Plaintiff operates the flight from Portland to Washington D.C. at a value of $1,000 and American Airlines operates the flight from Washington D.C. to Charlotte at a value of $500. Plaintiff would treat $1,000 as transportation revenue, but not the remaining $500 used to buy the seat on American Airlines' flight. (*See also* Def's MSJ at 3, n5 (providing a similar example).)

5, 20-21; *see also* Ptf's Ex B to Second Decl of Pedersen.) Plaintiff included the remaining codeshare revenue in its sales factor denominator, presumably as "miscellaneous sales," but did not include it in the numerator because "[n]one of Plaintiff's activity regarding codeshare revenue occurs in Oregon." (*See* Def's MSJ at 4; Ptf's Resp at 5; Second Decl of Pedersen at ¶38.) Defendant accepted Plaintiff's revised calculations of codeshare revenue to account for double counting. (Def's Reply at 9.) The parties continue to disagree whether codeshare revenue is transportation revenue. (Ptf's Resp at 5, Def's Reply at 9.)

    4.      *Plaintiff's additional revenue items*

          a.      Horizon's transportation revenue and Bombardier price credit

At audit, Defendant determined that the transportation revenue to be included in Plaintiff's sales factor numerator was the sum of Plaintiff's transportation revenue and its codeshare revenue. (Def's MSJ at 9, citing Stip Ex G at 4, 9, 14 and Def's Exs A to C.) Defendant accepted Plaintiff's denominator as reported, which included the following Horizon "air transport" revenue after elimination of intercompany receipts: $4,271,408 in 2012; $3,936,014 in 2013; and $3,936,014 in 2014. (Def's MSJ at 4, citing Wrinn Decl ¶¶ 2-4, Def Exs A-C.) Plaintiff maintains that the "Horizon receipts not eliminated from the sales factor denominator relate to payments received from third parties for non-transportation activities." (Ptf's Resp at 4.) Specifically, Plaintiff asserts that, during each tax year at issue, "Bombardier provided Horizon with a price subsidy of $3,440,808.60, which has been included in taxable non-transportation revenue by Horizon * * *." (Second Decl of Pedersen at ¶6.)

Defendant disagrees that Plaintiff has adequately substantiated that revenue previously labeled as "air transport" was in fact price subsidies from Bombardier. (Def's Reply at 2.) In any event, Defendant maintains that any transportation revenue included in Plaintiff's

denominator should be included in its numerator.  (Def's MSJ at 9-10, Reply at 7-8.)

        b.      Passive income

Plaintiff included revenue items identified as "rents," "interest," "proceeds on retirements," "other income," and "intangibles" in its sales factor denominator.  (*See* Def's MSJ at 4, Def's Decl of Wrinn Exs A-C and Ptf's Ex 1 (total revenue on spreadsheets matches everywhere sales on returns).)  At audit, Defendant did not remove rents, interest, or proceeds on retirements of aircraft from the denominator, but now maintains those items should be removed. (Def's MSJ at 8; *see also* Stip Ex G at 2, 7, 12 (explaining the adjustments were to the numerator).)  Plaintiff disagrees.  (Ptf's Resp at 14-17.)

B.     *Issues Presented and Standard for Summary Judgment*

The parties presented four issues for summary judgment for the 2012 to 2014 tax years:

(1) whether Horizon's flight data must be included in Plaintiff's departure ratio;

(2) whether transportation sales include "codeshare revenue";

(3) the correct amount of Horizon's transportation revenue to be included in the sales factor numerator and denominator; and,

(4) whether passive income items – *i.e.*, rents, interest, and proceeds from the retirement of aircraft – must be excluded from the entire sales factor formula.

(*See* Ptf's Resp at 2-6, Def's Reply at 1.)  The court shall grant summary judgment "if the pleadings, depositions, affidavits, declarations, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law."  Tax Court Rule 47 C.

In all proceedings before this court, the party seeking affirmative relief shall bear the burden of proof by a preponderance of the evidence.  ORS 305.427.[4]  A "[p]reponderance of the

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2011.  The 2013 ORS are applicable to the 2014 tax year.  The relevant provisions of the ORS are the same, though ORS 317.715 (3)(b) was renumbered

means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). In an appeal from a notice of assessment, this court has authority to find the correct amount of the deficiency even if on other or different from those asserted by the department. ORS 305.575. Defendant asks the court to exercise its authority under ORS 305.575 to correct the amount of Horizon's transportation revenue in the sales factor numerator and to remove passive income items. (Def's MSJ at 1-2, 7.) Plaintiff asks the court to correct the amount of codeshare revenue in the sales factor and to find that certain revenue previously identified as "air transport" was in fact an aircraft credit. (Ptf's Resp at 5, 20-21.)

C.     *Analysis*

Plaintiff is a "public utility" within the meaning of ORS 314.610(6).[5] Accordingly, Plaintiff's income from business activity allocable to Oregon is determined in accordance with ORS 314.280 and rules promulgated by Defendant pursuant to that statute. The regime set out in ORS 314.280 for financial institutions and public utilities predates the Uniform Division of Income for Tax Purposes Act (UDITPA), which was enacted in 1965 and is codified at ORS 314.605 to 314.675. *See Fisher Broadcasting, Inc. v. Department of Revenue*, 321 Or 341, 353 (1995). Reading ORS 314.280 and UDITPA together, the court found "a specific legislative intent to exclude utilities, financial institutions, and individuals who provide personal services from the newly created UDITPA provisions." *Id.*; *see also* ORS 314.615 (excluding financial institutions and public utilities from UDITPA). Notwithstanding the "two statutory regimes" of ORS 314.280 and UDITPA, Defendant may and has incorporated UDITPA definitions in special

_____

to (4)(b) in 2013. Or Laws 2013, ch. 707, § 2.

[5] A public utility "means any business entity whose principal business is ownership and operation for public use of any plant, equipment, property, franchise, or license for the transmission of communications, transportation of goods or persons, or the production, storage, transmission, sale, delivery, or furnishing of electricity, water, steam, oil, oil products or gas." ORS 314.610(6).

rules promulgated under ORS 314.280 so long as they do not conflict with ORS 314.280. *See*

*US Bancorp v. Dept. of Rev.*, 19 OTR 266, 298 n17 (2007) (discussing the holding of *Fisher*

*Broadcasting*); *see also Crystal Communications v. Dept. of Rev.*, 353 Or 300, 302-304 (2013)

(discussing the "two separate statutory mechanisms" of ORS 314.280 and UDITPA, but noting

that Defendant's rules under ORS 314.280 "largely incorporate by reference the methods of

apportioning business income established under UDITPA").

Pursuant to its authority under ORS 314.280, Defendant has promulgated a special rule

for the apportionment of income from airlines. *See* OAR 150-314-0078. The rule states that,

"[w]here an airline has income from sources both within and without this state, the amount of

apportionable income from sources within this state is determined pursuant to ORS 314.610 to

314.665 [UDITPA] except as modified by this rule." OAR 150-314-0078(1).[6] As with

UDITPA, Oregon now uses only the sales factor to apportion the income of airlines to this state.

*See* ORS 314.280(3)(a); ORS 314.650; and OAR 150-314-0078(1).[7]

OAR 150-314-0078(2)(d) sets forth a modified sales factor for airlines:

> "The transportation sales derived from transactions and activities in the regular
> course of the trade or business of the taxpayer and miscellaneous sales of
> merchandise, etc., are included in the denominator of the sales factor (ORS
> 314.665 and OAR 150-314-0425). Passive income items such as interest, rental
> income, dividends, etc., are not included in either the numerator or the
> denominator nor are the proceeds or net gains or losses from the sale of aircraft
> included. The numerator of the sales factor is the total sales of the taxpayer in
> this state during the income year. The total sales of the taxpayer in this state
> during the income year is the result of the following calculation: The ratio of

---

[6] The parties cited to the current version of this rule, which references "apportionable income." The version of the rule in effect in 2012 was substantially similar but used the term "business income" instead. *See* OAR 150-314.280-(I). Presumably, the current rule was amended to reflect the change from "business income" to "apportionable income" in UDITPA. *See* 2017 Or Laws ch 43, §1.

[7] ORS 314.280(3)(a) requires the rules under ORS 314.280 to "apply the weightings used in ORS 314.650 to comparable factors used to apportion income from business activity of taxpayers." ORS 314.650 states that "[a]ll business income shall be apportioned to this state by multiplying the income by the sales factor." Accordingly, OAR 150-314-0078(1) states that "[a]pportionable income is apportioned to this state by use of the formula provided in ORS 314.650 as it applies to the tax year involved."

departures of aircraft in this state weighted as to the cost and value of aircraft by type, as compared to total departures similarly weighted, multiplied by the total transportation revenue. The product of this calculation is to be added to any nonflight sales directly attributable to this state."

Defendant offered a helpful depiction of the modified sales factor expressed in the rule:

$$\frac{\left(\left(\left(\frac{Weighted\ Oregon\ Departures}{Weighted\ Total\ Departures}\right) \times Transp.\,Revenue\right) + Oregon\ Nonflight\ Sales\right)}{(Transp.\,Revenue + Miscellaneous\ Sales)}$$

(Def's MSJ at 6.)

The rule further defines several terms used in the sales factor. *See* OAR 150-314-0078(2)(a). "Transportation sales" are "sales from transporting passengers, freight, and mail as well as liquor sales, pet crate rentals, etc." OAR 150-314-0078(2)(a)(J). "Departures" are "all takeoffs, whether they be regularly scheduled or charter flights, that occur during revenue service." OAR 150-314-0078(2)(a)(K). "Revenue service" is "the use of aircraft ready for flight for the production of revenue." OAR 150-314-0078(2)(a)(I). "Aircraft ready for flight" are "aircraft owned or acquired through rental or lease (but not interchange) which are in the possession of the taxpayer and are available for service on the taxpayer routes." OAR 150-314-0078(2)(a)(H).

The issues presented for summary judgment primarily concern the proper interpretation of OAR 150-314-0078. In construing an administrative rule, the court relies "on the same methods Oregon courts use in statutory interpretation. Namely, the court must 'determine the meaning of words used, giving effect to the intent' expressed by the department in adopting the rule." *Boardman Tree Farm, LLC v. Morrow County Assessor*, 20 OTR 361, 366-67 (2011), citing *Abu Adas v. Employment Dept.,* 325 Or 480, 485, 940 P2d 1219 (1997). The court examines the text, context, and administrative history to determine the meaning of the rule. *See*

*State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). As with statutes, the court must not "insert what has been omitted, or * * * omit what has been inserted" and, where possible, should adopt the construction that will give effect to all provisions of the rule. *See* ORS 174.010.

The court begins with the text because the wording adopted by the agency is the most "persuasive evidence of the intent" and wishes of the agency. *See Gaines*, 346 Or at 171 (explaining relevance of text in statutory construction). The court gives "words of common usage their 'plain, natural and ordinary meaning." *PGE v. Bureau of Labor and Industries,* 317 Or 606, 611, 859 P2d 1143 (1993). "Context includes other provisions of the same rule, other related rules, the statute pursuant to which the rule was created, and other related statutes." *Abu-Adas*, 325 Or at 485. Administrative history might include "any relevant statement of agency intent in the rule adoption process * * *." *1000 Friends of Oregon v. Jackson County*, 292 Or App 173 (2018). With that background in mind, the court considers each of the issues presented in the parties' cross motions for summary judgment.

1. *Whether Horizon's flight data must be included in Plaintiff's departure ratio*

As set forth above, the modified sales factor for airlines requires "total transportation revenue" to be multiplied by "the departures of aircraft in this state * * * as compared to the total departures[,]" each "weighted as to the cost and value of aircraft by type," referred to as the "departure ratio." OAR 150-314-0078(2)(d).

Plaintiff maintains that Horizon's departures may not be included in Alaska's departure ratio, making several arguments in support of that position. First, the revenue Alaska received from selling tickets on Horizon's flights pursuant to the CPA is not "transportation revenue;" rather, it is derived "from the marketing, advertising, and providing of reservation and ticketing services" like the operations of "a travel agent or online travel booking company." (Ptf's MSJ at

1-2, 5, 21.) Second, although Horizon's income under the CPA would qualify as transportation revenue, Horizon's revenue was "eliminated as an intercompany transaction between members of an affiliated group filing an Oregon consolidated return." (*Id.* at 7.) To include the eliminated revenue as "transportation revenue" is contrary to Oregon law. (*Id.* at 10.) Horizon flight sales should be treated in the same manner as SkyWest and Peninsula flight sales, which were not reflected in the departure ratio. (*Id.*) Third, Alaska and Horizon are separate entities and must be considered as such under ORS 317.715(3)(b) and OAR 150-317-0630. (*See* Ptf's MSJ at 13.) The special rule refers to "an airline" and "the taxpayer" rather than a "unitary group," so it is inappropriate to apply the departure ratio to the unitary group. (Ptf's MSJ at 21; Resp at 10.) Finally, Alaska and Horizon are distinct airlines under the FAA; Alaska has no authority to operate Horizon's planes and vice versa. (Ptf's MSJ at 4, 10.)

Defendant maintains that Horizon's departures must be included in the "departure ratio" because its aircraft were used in revenue service. (Def's MSJ at 2, 10-14.) First, Alaska and Horizon constitute a unitary business that filed a consolidated return, so "Horizon's flight data must be counted in the departure ratio to properly reflect the consolidated filers' business activity in Oregon." (*Id.* at 12.) Second, Horizon's transportation revenue is included in the numerator and denominator of the sales factor, so the departure ratio applied should also include Horizon's flight data. (*Id.*) Including Horizon's departures in the departure ratio is consistent with the broader goal of ORS 314.280, to "fairly and accurately reflect the net income of the business done within the state." (*See* Def's Reply at 4-5.) Third, from the customers' perspective, "Alaska and Horizon operate as one airline under the name 'Alaska Airlines.'" (Def's MSJ at 10 (noting that "Horizon flights are listed under Alaska's designator code in airline reservation systems, and in all customer-facing locations").) Finally, Defendant disagrees that ORS

317.715(3)(b) requires the sales factor be determined on a company-by-company basis; rather, it provides that a corporation does not have nexus with Oregon simply because it is a member of a unitary group of corporations doing business in this state, and, accordingly, its sales may not be included in the numerator of the apportionment factor. (Def's Reply at 3-4.)

a.      Text

Central to Plaintiff's argument is the notion that each airline must be considered separately under the rule, as indicated by references to "airline" and "taxpayer" in the singular. The departure ratio compares "departures of aircraft in this state" with "total departures." OAR 150-314-0078(2)(d). Although the rule does not identify whose aircraft are included, subpart (1) of the rule references "an airline" and the "sales (transportation sales) factor" description references "the taxpayer" – each a singular term. Plaintiff reasons that those terms mean that each airline must be considered separately. It maintains that ORS 317.715(3)(b) and the accompanying rule, OAR 150-317-0630(2),[8] support that reading. (*See* Ptf's Resp at 11-12.)

As used in Oregon statutes, "[t]he singular number may include the plural and the plural number, the singular." ORS 174.127(1); *see also School Dist No 1 v. Mult Co*, 9 OTR 371, 377 (1983) (applying that statute to support reading a singular term, "corporation," to be plural in context); *see also Landsem Farms, LP v. Marion County*, 190 Or App 120, 127-128 (2003) (construing the term "gathering" in the singular based on the context). The fact that the rule uses singular terms does not end the inquiry; the court must consider those terms in context.

---

[8] ORS 317.715(3)(b) states, in relevant part, that "[t]hose members of an affiliated group making a consolidated federal return or a consolidated state return may not be treated as one taxpayer for purposes of determining whether any member of the group is taxable in this state or any other state with respect to questions of jurisdiction to tax or the composition of the apportionment factors used to attribute income to this state under ORS 314.280 or 314.605 to 314.675." OAR 150-317-0630(2) states, in relevant part, that "[i]n applying the apportionment provisions of ORS 314.280 or 314.605 to 314.667, each corporation subject to the tax jurisdiction of Oregon must be considered separately."

b.      Context

Relevant context includes the unitary business rule and combined reporting under Oregon law. *See generally* ORS 317.705 to 317.715 (defining "unitary business," generally requiring a consolidated state return by affiliated groups filing federal consolidated returns that are engaged in a unitary business).[9]  As the Oregon Supreme Court has explained,

> "the purpose of the combined report is to insure that the income of a business conducted partly within and partly without the taxing state shall be determined and apportioned in the same manner regardless of whether the business is conducted by one corporation or by two or more affiliated corporations.  In cases where the business is conducted by one corporation, the income is computed as a unit and apportioned by means of an appropriate formula * * *.

> "When the combined report is employed, exactly the same procedure is followed, and the same results obtained, in cases where the business is conducted by more than one corporation.  The income is still computed as a unit just as it would be if the business had been conducted by one corporation only."

*Coca Cola v. Dept. of Rev.*, 271 Or 517, 526 (1975), quoting Keesling, *A Current Look at the Combined Report and Uniformity in Allocation Practices*, 42 J Taxation 106 (Feb 1975) (internal quotation marks omitted).  In approving the combined reporting method for unitary businesses, the court found the statutory reference to "taxpayer in the singular" was "no bar[,]" noting "that the prior statute also spoke in the singular" yet the court approved combined reporting.  *Id.* at 528,[10] citing *Zale-Salem, Inc. v. State Tax Comm'n*, 237 Or 261, 391 P2d 601 (1964).  A

---

[9] Although Oregon law refers to a unitary group filing a "consolidated" state return, it is "effectively[] a combined report."  *See Cook v. Dept. of Rev.*, TC 5298, WL 3956126 at *10 (Aug 17, 2018); *see also* Hellerstein & Hellerstein, *State Taxation*, §8.11(3), fn 1203 (3d Ed Sept 2019) (stating that Oregon "essentially provides for combined reporting (that reflects constitutional restraints on apportionability of income * * *) by limiting the affiliated group to affiliates engaged in a unitary business * * * and providing for appropriate modifications of the apportionable base and the formula to reflect the exclusion of nonunitary affiliates."  The federal consolidated return is the starting point for determining Oregon taxable income.  ORS 317.715(1).  If a federal consolidated return group includes more than one unitary group, they must be separated for before Oregon modifications and apportionment.  ORS 317.715(2), (3)(a).

[10] The court interpreted ORS 314.615, which, "for the tax years 1965 and 1966 * * * required a taxpayer having business which is taxable both within the without the state to use the apportionment method."

business should not "stand in a better position for purposes of determining income merely because it chooses to use a multiple corporation organizational scheme." *Id.*[11]

Plaintiff argues that ORS 317.715 and the related rule support a reading of "airline" and "taxpayer" in the singular, whereas Defendant maintains that they serve only to exclude from the numerator corporations that lack nexus with Oregon. (*See* Def's Reply at 3-4.)

ORS 317.715(3)(b) states in relevant part that

"members of an affiliated group * * * making a consolidated state return may not be treated as one taxpayer for purposes of determining whether any member of the group is taxable in the state * * * with respect to questions of jurisdiction to tax or the composition of the apportionment factors used to attribute income to this state[.]"

In Plaintiff's view, the reference to "the composition of the apportionment factors used to attribute income to this state" should be read to mean that Plaintiff and Horizon's sales factors must be determined separately. Looking at Horizon individually, it had no transportation sales because it sold its entire capacity to Plaintiff in each tax year; those sales were eliminated as intercompany transfers. (*See* Ptf's MSJ at 7, 10-11, 17-19, 24; Ptf's Resp at 3.) Defendant disagrees, arguing that a "company-by-company" determination of the sales factor ignores the definition and significance of the unitary group. (Def's Reply at 4.)

Plaintiff's reading of ORS 317.715(3)(b) is contrary to the apportionment of business income of a unitary group filing a consolidated Oregon return.

"Apportionment is the process by which a 'base' of business income is divided among two or more states. * * * A fundamental first step in this analysis is that apportionment can be applied to a base of business income of one entity operating in several states or a related group of entities operating in several states. However, apportionment of the income of a group of entities occurs when a state

---

[11] *See also U.S. Bancorp and Subsidiaries v. Dept. of Rev.*, 13 OTR 84, 86, 88 (1994) (where plaintiffs were a parent with 32 and 48 subsidiaries in the years at issue, the court found that "the dominant business activities of *the unitary group* [were] banking and financial services" so ORS 314.280 applied to the apportionment of plaintiffs' income (emphasis added)).

has adopted combination rules in some form.  In both cases--either one entity or a group of entities--it is said that *what is being apportioned is the income of a 'unitary' operation*."

*Cook v. Dept. of Rev.*, TC 5298, WL 3956126 at *4 (Aug 17, 2018) (emphasis added); *see also*

*Crystal Communications, Inc.*, 353 Or at 303 ("The apportionment method * * * generally has

been understood to apply to unitary businesses * * *") (citation omitted).

The function of ORS 317.715(3)(b) is, as Defendant said, to exclude from the numerator

of the apportionment formula the income of corporations that lack nexus with Oregon.  That is

"the teaching of 317.715(3)(b)" – that a corporation may not "be included in the numerator of the

relevant apportionment formula" merely because it is the parent of a taxpayer doing business in

Oregon and they are members of the same unitary group.  *Ann Sacks Tile & Stone v. Dept. of*

*Rev.*, 20 OTR 377, 379-380 (2011).  The example provided in the rule confirms that reading:

> "Corporations A, B and C are members of the same unitary group and file a consolidated federal return.  Corporation C is 'doing business' in Oregon as defined under ORS 317.010(4) while Corporations A and B have no activities in Oregon.  Since Corporation C is the only member of the affiliated group subject to the tax jurisdiction of Oregon, the Oregon amounts included in the numerator of the apportionment formula are determined by applying the provisions of 314.605 to 314.667 to the business activities of Corporation C.  The denominator of the apportionment formula will include the everywhere amounts for Corporations A, B and C as determined by applying the provisions of 314.655 to 314.667."

OAR 150-317-0630; *see also Estee Lauder Services Inc. v. Dept. of Rev.*, 16 OTR-MD 279, 284-

85 (1999) (explaining the operation of ORS 317.715(3)(b) and providing a similar example).)

A unitary business enterprise is characterized by "a sharing or exchange of value"

between the members.  ORS 317.705(3).  A unitary business composed of multiple corporations

is necessarily part of an affiliated group in which a parent controls the subsidiaries through stock

ownership.  Here, the parties agree that Plaintiff and Horizon are unitary affiliates and that each

airline does business in Oregon.  Thus, the base of income to be apportioned represents the

business activity of the unitary group – including Plaintiff and Horizon – and the departure ratio used to apportion transportation revenue to Oregon should reflect Horizon's flight data.

Plaintiff argues that this conclusion treats CPA revenue from Horizon inconsistently with CPA revenue received from SkyWest and Peninsula, characterizing all such revenue as "non-transportation" revenue. (Ptf's MSJ at 10; Ptf's Resp at 13-14.) However, an examination of how the relevant definitions fit together explains the different outcomes for Horizon as compared with other, unaffiliated airlines. The term "departures" is defined as takeoffs that occur "during revenue service." The term "revenue service" is defined as the "use of aircraft ready flight for the production of income." "Aircraft ready for flight" must be "owned or acquired through rental or lease" and "in the possession of the taxpayer." That definition necessarily excludes aircraft owned or leased by third party airlines that are not "the taxpayer." Because the court has determined "the taxpayer" refers the unitary group in this context, departures of aircraft owned or leased by Horizon and used for the production of revenue count in the departure ratio.

Plaintiff further argues that this conclusion ignores the differences between Plaintiff and Horizon with respect to FAA regulations, the fleet of aircraft used, the flight crews, and other aspects of the flight experience such as food and beverage options. Undoubtedly, every corporation is subject to distinct regulations based on the nature of its activities and the locations where it operates; for instance, each corporation doing business in Oregon must separately register with the Secretary of State. Corporations within a unitary group may have separate work forces.[12] The special airline apportionment formula accounts for differences between Plaintiff's and Horizon's fleets because the departure ratio is weighted as to the cost and value of aircraft by

---

[12] For example, in *Zale-Salem, Inc.*, 237 Or at 262-265, the court upheld the use of a three-factor apportionment formula to the income of a unitary business composed of separate corporations operating jewelry stores in multiple states with a common parent corporation. Presumably each jewelry store had its own sales force.

type.  It is unclear whether Plaintiff means to suggest that Plaintiff and Horizon are not, in fact, unitary.  In any event, that issue is not before the court and does not alter the outcome here.

c.      Conclusion on the departure ratio

The court agrees with Defendant that the departure ratio should include Horizon's flight data.  The references to "departures of aircraft" should be read in context to refer to aircraft owned or leased by members of the unitary group and used for the production of revenue.  The use of "airline" and "taxpayer" in the singular is not conclusive as to the scope of those terms.  The context of a unitary group filing a consolidated state return supports the conclusion that the sales factor should reflect the business activity of the unitary operation.  Thus, Horizon's flight data should be reflected in the departure ratio to fairly reflect the group's business in Oregon.

2.      *Whether "transportation sales" include codeshare revenue*

Plaintiff recalculated its codeshare revenue to remove amounts attributable to double-counting and Defendant is willing to accept Plaintiff's recalculation.  (*See* Def's Reply at 1-2, 9.)  The parties disagree whether the remaining codeshare revenue – described by Plaintiff as service fees – is "transportation revenue" under OAR 150-311-0078.  (*See id.*; Ptf's Resp at 5, 20.)  Plaintiff maintains that codeshare revenue is not "transportation revenue" because Plaintiff "does not operate the corresponding flights."  (Ptf's Resp at 5.)  The flights are operated by third party airlines.  (*Id.* at 20.)  Defendant responds that, unlike the departure ratio, the definition of "transportation revenue" is not tied to the definition of "aircraft ready for flight," so the ownership of the aircraft used for flights does not matter.  (*See* Def's Reply at 9.)  "The pertinent issue is whether the sales derived from transporting passengers.  To the extent that plaintiff's codeshare revenue represents the portion it retained as revenue for transporting passengers on an airline, that amount is properly included as transportation revenue in both the numerator and

denominator of the sales factor." (*Id.*)

Once again, the question turns on the proper construction of the administrative rule. Looking first at the text, "transportation sales" is defined in relevant part as "sales from transporting passengers." The rule does not specify *who* is transporting passengers, so it could refer to Plaintiff only, Plaintiff's unitary group, or any airline, as Defendant contends. Whereas the departure ratio – used to apportion transportation revenue to this state – is limited to aircraft owned or leased by Plaintiff or Horizon, Defendant argues that no such limitation exists on the definition of "transportation sales."

Plaintiff urges the court to consider the context, including ORS 314.280 and the departure ratio. Plaintiff argues that, in order to fairly reflect its income as required by ORS 314.280, transportation revenue should not include codeshare revenue because Plaintiff does not receive the benefit of the third-party airlines' flight data in its departure ratio. In other words, the flight-related sales counted in transportation revenue should match the flight data used for purposes of determining the departure ratio. (*See* Ptf's Resp at 5-6.) Defendant recognizes the relationship between "transportation revenue" and the departure ratio but declines to extend that reasoning to codeshare revenue: "the total transportation revenue should be the same in the denominator and in the numerator, because it is the departure ratio that apportions the correct amount of transportation revenue to Oregon." (Def's MSJ at 9.)

On this question, the court agrees with Plaintiff that the context of the rule, particularly the composition of the departure ratio, supports the conclusion that codeshare revenue is not "transportation revenue" because the flights are operated by third party airlines. The court has concluded that the departure ratio should reflect data from Plaintiff's and Horizon's flights. To read the rule consistently, the transportation revenue to which the departure ratio is applied

should similarly reflect sales from flights operated by Plaintiff and Horizon, not third parties.

   3.    *The amount of Horizon's "transportation revenue" in the sales factor*

Defendant noted that Plaintiff's sales factor denominator included Horizon's air transport revenue that was not similarly included in the numerator: $4,271,408 in 2012; $3,936,014 in 2013; and $3,936,014 in 2014. (*See* Def's MSJ at 4, 9.) Defendant asserts that the transportation revenue in the denominator should match that in the numerator and asks the court to correct the numerator to reflect those amounts of Horizon's air transport revenue. (*Id.* at 2, 9.) In response, Plaintiff reported its discovery that "its Oregon sales factor denominator has been improperly inflated" to reflect price credits for aircraft received from Bombardier. (Ptf's Resp at 19.) Plaintiff does not appear to dispute the general proposition that transportation revenue in the denominator should also be reflected in the numerator but responds that the remaining amount of Horizon's air transport revenue is *de minimis* miscellaneous revenue, *e.g.*, $830,000. (Ptf's Resp at 17-18.) Defendant agrees that a credit from Bombardier would not qualify as "transportation revenue" but disputes that Plaintiff has adequately substantiated that revenue previously labeled as "air transport" was in fact due to a Bombardier price credit. (Def's Reply at 2, 7 n6.)

On the question of whether the transportation sales in the numerator and denominator of the sales factor must match, the rule is not a model of clarity. In describing the denominator, it refers to "transportation sales derived from transactions and activities in the regular course of the trade or business of the taxpayer" in addition to miscellaneous sales. In describing the numerator, it refers to "the total transportation revenue." Transportation sales is a defined term under the rule, whereas transportation revenue is not. At oral argument, the parties agreed that the terms are used interchangeably and have the same meaning.[13] Accordingly, the court agrees

---

[13] (*See also* Def's MSJ at 6, n8 (explaining that Defendant "amended the rule in 2007 to replace the word "revenues" with "sales" as part of an update of several rules to reflect the move to a single sales factor

with Defendant that Horizon's transportation revenue in the denominator of the sales factor should match its transportation revenue in the numerator under OAR 150-314-0078(2)(d).

The second question is whether Plaintiff adequately substantiated that some portion of revenue labeled "air transport" was in fact due to a Bombardier price credit. Except for expert opinions, "affidavits or declarations must be made on personal knowledge, must set forth such facts as would be admissible in evidence, and must show affirmatively that the affiant or declarant is competent to testify to the matters stated therein." TCR 47 D. "A party opposing summary judgment cannot rest upon the allegations of his pleadings[, but] must 'disclose the merits of [its] case or defense." *Eugene Television, Inc. v. Flinn,* 43 Or App 837, 841, 604 P2d 437 (1979). "Even if facts are undisputed, if the inferences arising from them are susceptible to more than one reasonable conclusion, summary judgment should not be granted." *Van Osdol v. Knappton Corp.*, 91 Or App 499, 502, 755 P2d 744 (1988).

Here, Plaintiff supported its contention with the declaration of Brandon Pedersen, Plaintiff's "Executive Vice President – Finance, CFO, and Treasurer," who made the declaration based on his "personal knowledge of the facts stated" therein. Specifically, Pedersen declared that "[d]uring each of the three tax years under audit, Bombardier provided Horizon with a price subsidy of $3,440,808.60, which has been included in taxable non-transportation revenue by Horizon for each of the three tax years under audit." (Second Decl of Pedersen at ¶6.) He also provided "a true and complete copy of the Oregon Corporation Excise Tax Apportionment Calculation for the tax years" at issue. (*Id.* at ¶3, citing Ex B.) Under both the "Amended" and "Corrected" categories, Exhibit B lists the Horizon Bombardier subsidies under "Everywhere

apportionment formula. 46 Or Bull 27 (Nov 2007). [Defendant] found nothing in the administrative history to suggest that the department intended to differentiate "transportation sales" from "transportation revenue.")

Sales" but not under the "Oregon Sales" category. (*See* Ex B.) Neither the declaration nor the exhibit reference any "air transport" revenue for Horizon. (*See id.*)

From the evidence submitted by Plaintiff, the court is satisfied that Plaintiff received a price credit from Bombardier in each of the three tax years at issue. However, the court is unable to determine if those credits were previously reported as "air transport" revenue. Pedersen declared that the credit was received, but not that it was previously mislabeled. Exhibit B does not appear to address the category of revenue previously identified as Horizon's air transport. The court is unable to resolve this factual dispute on summary judgment. The parties are directed to confer and, if they are unable to resolve the dispute, may request a short evidentiary hearing or propose a schedule by which to submit additional evidence on the issue.

4.    *Whether "passive income items" are included anywhere in the sales factor*

Defendant asks that income from rents, interest, and the retirement of aircraft be removed from Plaintiff's sales factor denominator because it is passive income under OAR 150-314-0078(2)(d). (Def's MSJ and Reply at 1-2, 7-8.) Plaintiff disagrees, arguing that the rule's function is to source "transportation sales" of airlines, but "non-transportation sales" – such as passive income – are sourced under UDITPA. (Ptf's Resp at 3-4.) It Plaintiff's view, its "Oregon sales factor numerator and denominator" are the result of the following equation: (Oregon transportation sales/total transportation sales) + (Oregon non-transportation sales/total non-transportation sales). (*Id.* at 16-17.) Plaintiff maintains that the rule's exclusion of passive income items "affirms that these types of receipts are non-transportation in nature and therefore are excluded from the transportation sales factor calculation but would be included in the general sales factor calculation to the extent applicable." (*Id.* at 16.)

/ / /

a.      Text

OAR 150-314-0078(2)(d) provides, in part, that "Passive income items such as interest, rental income, dividends, etc., are not included in either the numerator or the denominator nor are the proceeds or net gains or losses from the sale of aircraft included."  A plain reading of this text supports Defendant's view that passive income items should be removed from both the numerator and the denominator of the sales factor.  Plaintiff's arguments against this reading are based on the context, including other provisions of the rule and other statutes.

b.      Context

i.      *Scope of OAR 150-314-0078(2)(d)*

Plaintiff argues that OAR 150-314-0078(2)(d), labeled the "Sales (Transportation Sales) Factor," serves the function of sourcing an airline's transportation receipts, but not other "non-transportation receipts."  Subpart (2)(d) of the rule begins, "[t]he *transportation sales* derived from transactions and activities in the regular course of the trade or business of taxpayer * * *[,]" indicating the scope of the rule is limited to transportation sales.  (*See* Ptf's Resp at 15 (emphasis added).)  OAR 150-314-0078(1) supports the use of UDITPA sourcing rules to the extent the special rule does not apply: "Where an airline has income from sources both within and without [Oregon], the amount of apportionable income from sources within [Oregon] *is determined pursuant to ORS 314.610 to 314.665 [UDITPA] except as modified by this rule*."  (*See id.* at 15 (quoting the rule) (emphasis added).)

Defendant disagrees that there is a "transportation" sales factor separate from the overall sales factor for airlines.  (Def's Reply at 5.)  "ORS 314.280(1) provides that the department has the authority to require public utilities to use 'the apportionment method of reporting, under rules and regulations adopted by the department.'  OAR 150-314-0078(2) is the rule for airlines."

(*Id.*)  The scope of that rule is not only transportation sales of airlines, but *all* sales of airlines; it provides the sales factor for airlines.  (*See id.* at 5-6.)

As discussed above, ORS 314.280 – applying to financial institutions and public utilities – and UDITPA are two distinct regimes and ORS 314.280 predates UDITPA.  Although Defendant has incorporated many UDITPA terms and concepts into its special rules promulgated under ORS 314.280, they are distinct regimes applicable to different types of taxpayers.  The court disagrees with Plaintiff that OAR 150-314-0078(2)(d) applies *only* to transportation sales.  By its terms, the rule references other types of sales: "miscellaneous sales of merchandise, etc.," which are included in the sales factor denominator; "nonflight sales directly attributable to [Oregon,]" which are included in the numerator; and "passive income items[,]" which are included in neither the numerator nor the denominator.  The rule serves as a substitute for the UDITPA sales factor rather than a modification only with respect to transportation sales.

ii.    *Fair apportionment of business income*

Plaintiff argues that Defendant's reading of the rule "makes no sense" because it excludes from apportionment "recurring business income generated by a taxpayer in the regular course of [its] trade or business" in violation of "the constitutional requirement that all income be fairly apportioned."  (Ptf's Resp at 4, 16, citing *Complete Auto Transit, Inc. v. Brady* (*Complete Auto*), 430 US 274 (1977).)  Defendant did not directly respond to this argument.

For the tax years at issue, "business income" was defined as "income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, the management, use or rental, and the disposition of the property constitute integral parts of the taxpayer's regular trade or

business operations." ORS 314.610(1).[14] The court agrees with Plaintiff that "passive income items" such as rents, interest, and proceeds on the sales of aircraft may fall within the definition of "business income." However, ORS 314.280(1) directs that an airline's "income from business activity" be apportioned in accordance with the rule promulgated by Defendant, OAR 150-314-0078. By its terms, that rule excludes passive income items from the sales factor.

Plaintiff argues that the exclusion of passive income items from its sales factor violates the requirement of fair apportionment under *Complete Auto*. In *Complete Auto*, the United States Supreme Court observed that its decisions "have sustained a tax against [a] Commerce Clause challenge when the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." 430 US at 279. Plaintiff has not articulated how the fair apportionment requirement under *Complete Auto* is violated in this case.

D.     *Conclusion*

Upon consideration, the parties' cross-motions for summary judgment are each granted in part and denied in part. Plaintiff's motion is granted with respect to the exclusion of "codeshare revenue" from transportation revenue and denied with respect to the remaining issues presented.

---

[14] As of 2017, the statute and rule refer to "apportionable income," with "apportionable income" defined as

"(a)(A) Income arising from transactions and activity in the regular course of the taxpayer's trade or business;

"(B) Income arising from the acquisition, management, employment, development or disposition of tangible and intangible property if the acquisition, management, employment, development or disposition is related to the operation of the taxpayer's trade or business; and

"(C) Any other income that is apportionable under the Constitution of the United States and not allocated under the laws of this state; and

"(b) Any income that would be allocable to this state under the Constitution of the United States, but that is apportioned rather than allocated pursuant to the laws of this state."

ORS 314.610(1).

Defendant's motion is granted with respect to the inclusion of Horizon's flight data in Plaintiff's departure ratio; the requirement that "transportation revenue" in the numerator and denominator match; and the exclusion of "passive income items" anywhere in the sales factor. The court was unable to resolve the parties' factual dispute concerning whether "transportation revenue" erroneously included amounts due to a Bombardier price credit. The parties are directed to confer and, if they are not able to resolve the dispute, may request a short evidentiary hearing or propose a schedule by which to submit additional evidence on the issue. Now, therefore,

IT IS ORDERED that the parties' cross-motions for summary judgment are each granted in part and denied in part.

IT IS FURTHER ORDERED that, within 30 days, the parties will notify the court in writing whether they were able to resolve the factual question concerning total "transportation revenue" and, if not, propose date for a short evidentiary hearing or a schedule by which to submit additional evidence on the issue.

Dated this ＿＿ day of February 2020.


＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
ALLISON R. BOOMER
MAGISTRATE

*This interim order may not be appealed. Any claim of error in regard to this order should be raised in an appeal of the Magistrate's final written decision when all issues have been resolved. ORS 305.501.*

*This document was signed by Magistrate Allison R. Boomer and entered on February 28, 2020.*